UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES EASTER,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>CDC STATE OF CALIFORNIA, et al.,<br><br>　　　　　Defendants. | Civil No. 07cv0187-L (RBB)<br><br>**REPORT AND RECOMMENDATION RE: GRANTING DEFENDANTS' MOTIONS TO DISMISS [DOC. NOS. 18, 25] AND DENYING PLAINTIFF'S MOTION TO PROCEED [DOC. NO. 23]** |

Plaintiff Charles Easter, a state prisoner proceeding pro se and in forma pauperis, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 on January 29, 2007 [doc. no. 1]. Easter alleges that Defendants showed deliberate indifference, wanton, willful and intentional negligence, and violated his right to freedom from cruel and unusual punishment by improperly placing him on the same prison yard where he was previously assaulted by other inmates. (Compl. 3, 6.)[1]

---

[1] Plaintiff has attached several exhibits to his Complaint, but they are not paginated. For convenience, all page numbers in the Complaint refer to the numbers supplied by the Court's electronic filing system.

1    Easter submitted a "Motion to Suppress," which was filed <u>nunc</u>
2 <u>pro tunc</u> to April 19, 2007 [doc. no. 11].  On May 4, 2007, the
3 Court ordered that the incident report filed with the Motion to
4 Suppress be considered as an exhibit to Plaintiff's Complaint [doc.
5 no. 13].
6    On June 11, 2007, Defendants E. Perez, Louie Panichello and
7 Brian R. Morris filed a Motion to Dismiss the Complaint [doc. no.
8 18].  Attached to the Motion was a Memorandum of Points and
9 Authorities in Support of Defendants' Motion to Dismiss and
10 Declarations from J. T. Stovall and A. Santiago.  Defendants Perez,
11 Panichello and Morris argue that the action should be dismissed
12 because Plaintiff failed to exhaust his administrative remedies.
13 (Mot. to Dismiss 1.)  In response, Easter submitted a Motion to
14 Proceed, filed <u>nunc pro tunc</u> to June 21, 2007 [doc. no. 23], which
15 alleges that he properly followed the appeals process and that the
16 prison was late in responding to his appeal.  (Mot. to Proceed 1-
17 2.)
18    On August 24, 2007, Defendant J. Tilton filed a Motion to
19 Dismiss the Complaint [doc. no. 25].[2]  Attached to the Motion was a
20 Memorandum of Points and Authorities in Support of Defendant J.
21 Tilton's Motion to Dismiss.  Defendant Tilton argues that the
22 action should be dismissed for three reasons.  First, Plaintiff
23 failed to exhaust administrative remedies.  (Tilton's Mot. to
24 Dismiss 1.)  Second, the Defendant is immune from suit.  (<u>Id.</u>)
25 Third, Plaintiff cannot maintain an action against Defendant Tilton
26 under a theory of <u>respondeat superior</u>.  (<u>Id.</u>)

---

28    [2] Defendant Tilton had not yet been served with the Summons and Complaint when the previous Motion to Dismiss was filed.  (<u>See</u> doc. no. 24.)

Plaintiff's Opposition to Defendants' Motion to Dismiss was filed October 12, 2007 [doc. no. 26]. Easter addresses three points. Initially, he asks that Defendant Tilton be dismissed from the action. (Pl.'s Opp'n 4.) Next, he requests that the action be dismissed without prejudice so that he can properly exhaust his administrative remedies. (Id.) Finally, he contests the factual accuracy of statements made in the Declaration of J. T. Stovall regarding Easter's administrative grievances. (Id. at 5.)

Defendants filed their Reply To Plaintiff's Opposition to Defendants' Motion to Dismiss on October 27, 2007 [doc. no. 27]. Defendants again argue that Plaintiff's claims should be dismissed pursuant to the unenumerated portions of Federal Rule of Civil Procedure 12(b) because Plaintiff failed to exhaust his administrative remedies before filing suit. (Defs.' Reply 2.) The Court found Defendants' Motions suitable for decision without oral argument pursuant to civil local rule 7.1(d)(1) [doc. no. 28].

For the reasons set forth below, the district court should **GRANT** Defendants' Motions to Dismiss.

## I. FACTUAL BACKGROUND

Easter was incarcerated in the Richard J. Donovan Correctional Facility ("Donovan"). (Compl. 1.) On August 27, 2006, while housed on yard four, he was assaulted by other inmates during a racial riot. (Pl.'s Opp'n 2; Compl. 7.) Easter was placed on administrative segregation status. (Compl. 7.) He was released from administrative segregation on September 29, 2006, and placed on yard two. (Pl.'s Opp'n 2.) After a "couple of weeks," he was returned to yard four. (Id.) On November 14, 2006, Easter was

1 | stabbed during another racial riot in yard four and taken to Mercy
2 | Hospital for treatment.  (Compl. 17-19, 73.)
3 |     Plaintiff alleges that he submitted an Inmate/Parolee Appeal
4 | Form ("602 form") on November 29, 2006.  (Pl.'s Opp'n 2.)  The 602
5 | form describes both the August 27, 2006, and the November 14, 2006,
6 | incidents and asks for an investigation.  (Stovall Decl. Ex. A at
7 | 1.)  It was stamped as received on February 7, 2007.  (Id.)
8 |     On February 9, 2007, Easter submitted a second 602 form
9 | requesting an answer to the form he allegedly submitted November
10 | 29, 2006.  (Pl.'s Opp'n Ex. B.)  This second 602 form was returned,
11 | with a letter from the Donovan appeals coordinator dated February
12 | 15, 2007.  (Pl.'s Opp'n Ex. C.)  The letter informed Plaintiff that
13 | the second inmate appeal was a duplicate of the first, which was
14 | received on February 7, 2007.  (Id. at 1.)  The letter also stated
15 | that the prison's response to the original appeal would be due
16 | March 23, 2007.  (Id.)
17 |     Easter resubmitted the second 602 form on February 21, 2007.
18 | (Pl.'s Opp'n 3.)  It was again returned by the Donovan appeals
19 | coordinator, along with a letter dated March 1, 2007.  (Pl.'s Opp'n
20 | Ex. D at 1.)  The letter contained the same information as the
21 | February 15 letter, along with the statement, "You are not
22 | authorized to bypass any level of the appeals process."  (Id.)
23 | Plaintiff then wrote to the Chief of Inmate Appeals on March 6,
24 | 2007, asking that the Donovan appeals officer be ordered to respond
25 | to his appeal.  (Pl.'s Opp'n Ex. E at 1.)
26 |     On April 11, 2007, as a result of his appeal, Easter was
27 | interviewed by Correctional Lieutenant C. P. Franco.  (Stovall
28 | Decl. Ex. C at 1.)  A written appeal response was signed on April

17, 2007, indicating that Plaintiff's appeal had been partially granted at the first level. (Id. at 1-2.) The "partially granted" designation was given because Easter had asked for an investigation, but only an appeal inquiry was warranted. (Stovall Decl. ¶ 8.) The response also said, "If you wish to appeal the decision, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Director's Level of Review. Once a decision has been rendered at the Director's Level of Review, your administrative remedies will be considered exhausted." (Stovall Decl. Ex. C at 2.)

On April 18, 2007, Easter was transferred to Ironwood State Prison ("ISP"). (Pl.'s Opp'n 3.) According to the Donovan appeals coordinator, the first level response to Plaintiff's 602 form was "received" by Plaintiff nine days later, on April 27, 2007. (Stovall Decl. ¶ 10.) The 602 form attached to Stovall's declaration, however, shows that it was "returned" to Easter on April 27, 2007. (Stovall Decl. Ex. A, at 2.) Easter alleges that he did not receive it until May 22, 2007. (Pl.'s Opp'n 3.) He then submitted a second level appeal to the ISP appeals office on May 25, 2007. (Pl.'s Opp'n Ex. F at 2.)

On June 6, 2007, the Chief of Inmate Appeals sent Easter a response to his March 6, 2007, letter and accompanying documents. (Id. Ex. E at 5.) The letter indicated that Easter's 602 form was being returned because review must be completed through the second level prior to being submitted for Director's level review. (Id.) It appeared that Plaintiff's appeal had been rejected or withdrawn or cancelled. (Id.)

Easter received a letter from ISP relating to his second level appeal on August 9, 2007. (Pl.'s Opp'n Ex. F at 2.) The appeal was returned to him because it should have been submitted directly to Donovan. (Id.) Easter alleges that he then resubmitted the appeal to Donovan. (Pl.'s Opp'n 3.) As of the date of Stovall's declaration, June 6, 2007, the prison had no record of Plaintiff submitting his 602 for second level review. (Stovall Decl. ¶ 10). Furthermore, as of the date of Santiago's declaration, June 7, 2007, Plaintiff had not submitted a third level appeal to the Director after completion of the second level of review. (Santiago Decl. ¶ 7.)

## II. LEGAL STANDARDS APPLICABLE TO THE FAILURE TO EXHAUST

### A. Motion to Dismiss Unexhausted Claims Pursuant to the Unenumerated Portions of Rule 12(b)

Title 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA") states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e(a) (West 2003). The exhaustion requirement applies regardless of the relief sought. Booth v. Churner, 532 U.S. 731, 741 (2001).

"'[A]n action is "brought" for purposes of § 1997e(a) when the complaint is tendered to the district clerk' . . . ." Vaden v. Summerhill, 449 F.3d 1047, 1050 (9th Cir. 2006) (quoting Ford v. Johnson, 362 F.3d 395, 400 (7th Cir. 2004)). Therefore, prisoners must "exhaust administrative remedies before submitting any papers to the federal courts." Id. at 1048 (emphasis added).

1      Section 1997e(a)'s exhaustion requirement creates an
2 affirmative defense.  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th
3 Cir. 2003).  "[D]efendants have the burden of raising and proving
4 the absence of exhaustion."  Id. (footnote omitted).  Defendants in
5 § 1983 actions properly raise the affirmative defense of failure to
6 exhaust administrative remedies through an unenumerated motion to
7 dismiss under Federal Rule of Civil Procedure 12(b).  Id.
8      Unlike Rule 12(b)(6) motions to dismiss for failure to state a
9 claim for which relief may be granted, "[i]n deciding a motion to
10 dismiss for failure to exhaust nonjudicial remedies, the court may
11 look beyond the pleadings and decide disputed issues of fact."  Id.
12 at 1119-20 (citing Ritza v. Int'l Longshoremen's & Warehousemen's
13 Union, 837 F.2d 365, 369 (9th Cir. 1988)).  "A court ruling on a
14 motion to dismiss also may take judicial notice of 'matters of
15 public record.'"  Hazleton v. Alameida, 358 F. Supp. 2d 926, 928
16 (C.D. Cal. 2005) (citing Lee v. City of Los Angeles, 250 F.3d 668,
17 688 (9th Cir. 2001)).  But "if the district court looks beyond the
18 pleadings to a factual record in deciding the motion to dismiss for
19 failure to exhaust[,] . . . the court must assure that [Plaintiff]
20 has fair notice of his opportunity to develop a record."  Wyatt,
21 315 F.3d at 1120 n.14.
22      "[When] the district court concludes that the prisoner has not
23 exhausted nonjudicial remedies, the proper remedy is dismissal of
24 the claim without prejudice."  Id. at 1120 (citing Ritza v. Int'l
25 Longshoremen's & Warehousemen's Union, 837 F.2d at 368 & n.3).  A
26 factual finding that Plaintiff failed to exhaust is reviewed under
27 the clearly erroneous standard.  Id.
28

**B.   The Administrative Grievance Process**

"The California Department of Corrections [CDC] provides a four-step grievance process for prisoners who seek review of an administrative decision or perceived mistreatment:  an informal level, a first formal level, a second formal level, and the Director's level."  Vaden, 449 F.3d at 1048-49 (citing Brown v. Valoff, 422 F.3d 926, 929-30 (9th Cir. 2005)).  The administrative appeal system can be found in title 15, sections 3084.1, 3084.5, and 3084.6 of the California Code of Regulations.  See Brown v. Valoff, 422 F.3d 926, 929-30 (9th Cir. 2005) (citing Cal. Code Regs. tit. 15, §§ 3084.1(a), 3084.5(a)-(b), (e)(1)-(2), 3084.6(c)).  To comply with the CDC's administrative grievance procedure, an inmate must bring his grievance at the informal level "within 15 working days of the event or decision being appealed . . . ."  Cal. Code Regs. tit. 15, § 3084.6(c) (2006); see also Brown, 422 F.3d at 929.  The inmate must then submit any appeal within fifteen working days of receiving an unacceptable lower level appeal decision.  Cal. Code Regs. tit. 15, § 3084.6(c).

**C.   Standards Applicable to Pro Se Litigants**

Where a plaintiff appears in propria persona in a civil rights case, the Court must construe the pleadings liberally and give Plaintiff the benefit of any doubts.  Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988).  The rule of liberal construction is "particularly important in civil rights cases."  Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992).

**III. PLAINTIFF'S FAILURE TO EXHAUST**

**A.   Judicial Notice**

Defendants request that the Court take judicial notice of California Department of Corrections and Rehabilitation Administrative Bulletin 05-03 ("Bulletin"), submitted in support of Defendants' Motion to Dismiss. (Defs.' Mem. of P. & A. 5 n.2.) The Bulletin sets forth the protocol for handling 602 forms alleging staff misconduct. (Stovall Decl. Ex. B at 1.)

The Court may take judicial notice of any fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "A court shall take judicial notice if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d).

Judicial notice may be taken of records of state agencies and other undisputed matters of public record. Disabled Rights Action Comm. v. Las Vegas Events, Inc., 375 F.3d 861, 866 n.1 (9th Cir. 2004) (citing Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001)). But the Court should not take judicial notice of agency records when the facts contained in them are subject to reasonable dispute. Brown, 422 F.3d at 931 n.7 (quoting City of Sausalito v. O'Neill, 386 F.3d 1186, 1224 n.2 (9th Cir. 2004)); Lee, 250 F.3d at 689. Also, a court should only take judicial notice of facts contained in agency records that bear "sufficient indicia of reliability . . . ." United States v. Perez-Corona, 295 F.3d 996, 1001 n.4 (9th Cir. 2002). The Court will take judicial

notice of the Bulletin, which sets forth guidelines for processing a staff complaint and does not contain any information that is disputed by either party.

**B.    Plaintiff's Objections to Defendants' Evidence**

Plaintiff objects to Stovall's Declaration on that ground that it is "based in part on fabrications." (Pl.'s Opp'n 5.) Specifically, Easter disagrees that Stovall received the original 602 form on February 7, 2007. (Id.) Plaintiff also contests the allegation that he received a first level response from Defendants on April 27, 2007. (Id. at 6.) In deciding a motion to dismiss for failure to exhaust nonjudicial remedies, the Court may decide disputed issues of fact. Wyatt, 315 F.3d at 1119-20. Since these objections amount to a dispute over issues of fact which may be decided by the Court, the objections are overruled. The Court will resolve the disputed issue on the basis of the evidence submitted.

**C.    Exhaustion of Administrative Remedies**

Defendants move to dismiss Plaintiff's Complaint pursuant to the unenumerated portions of Federal Rule of Civil Procedure 12(b) because Plaintiff has not properly exhausted his administrative remedies prior to filing suit. (Mot. to Dismiss 1.)

"Exhaustion of administrative remedies serves two main purposes." Woodford v. Ngo, 548 U.S. 81, __, 126 S. Ct. 2378, 2385 (2006) (citing McCarthy v. Madigan, 503 U.S. 140, 145 (1992)). It first "protects 'administrative agency authority'" by giving an agency "'an opportunity to correct its own mistakes . . . before it is haled into federal court,' and it discourages 'disregard of [the agency's] procedures.'" Id. (quoting McCarthy, 503 U.S. at 145). "Second, exhaustion promotes efficiency. . . . [and] 'may produce a

useful record for subsequent judicial consideration.'" Id. (quoting McCarthy, 503 U.S. at 145). These two purposes are best served when civil rights plaintiffs are forced to properly exhaust administrative remedies and comply with the deadlines set by the administrative agency. Id. at __, 126 S. Ct. at 2385-86.

Before the Ninth Circuit's decision in Wyatt, some courts treated motions to dismiss for failure to exhaust administrative remedies like motions to dismiss for lack of subject matter jurisdiction and assigned the burden of proof to Plaintiff. See Doe v. Schachter, 804 F. Supp. 53, 57 (N.D. Cal. 1992) (citing Thornhill Publ'g Co. v. General Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979)). Now, because the failure to exhaust is an affirmative defense, it is the defendant's burden to raise and prove the absence of exhaustion. Jones v. Bock, __ U.S. __, 127 S. Ct. 910, 921 (2007); Brown, 422 F.3d at 936. In ruling on Defendants' Motion, the Court may "look beyond the pleadings and decide disputed issues of fact." Wyatt, 315 F.3d at 1119-20. "[T]he court has a broad discretion as to the method to be used in resolving the factual dispute." Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d at 369.

If Defendants make a prima facie showing of a failure to exhaust, the burden shifts to Plaintiff to present evidence that he did exhaust administrative remedies. Wyatt, 315 F.3d at 1119; Ming Ching Jin v. Hense, No. 03cv5282-RECSMSP, 2005 WL 3080969, at *2 (E.D. Cal. Nov. 15, 2005). Defendants bear the burden of proof, in part, because "'it is considerably easier for a prison administrator to show a failure to exhaust than it is for a

prisoner to demonstrate exhaustion.'" <u>Wyatt</u>, 315 F.3d at 1119 (quoting <u>Ray v. Kertes</u>, 285 F.3d 287, 295 (3d Cir. 2002)).

Plaintiff filed his civil rights complaint pursuant to 42 U.S.C. § 1983 on January 29, 2007 [doc. no. 1]. According to Donovan prison records, Easter did not submit a 602 form requesting an investigation into staff misconduct until February 7, 2007. (Stovall Decl. ¶¶ 5-6, Ex. A.) Plaintiff claims that he submitted the 602 form on November 29, 2006, and he has provided the Court with a copy of a completed 602 form dated November 29, 2006. (Pl.'s Opp'n 2; Compl. 7.) But, there is no confirmation that this form was delivered to the prison administration or completed on the date shown. It bears no stamps from the prison. (<u>See</u> Compl. 7.) Additionally, the 602 form refers to "Attachment 1" which is a statement of facts dated January 17, 2007. (<u>Id.</u> at 8.) It appears the 602 form was also accompanied by a memorandum of law dated December 23, 2006. (<u>Id.</u> at 9-10.) These dates are well after the alleged submission date of November 29, 2006.

The 602 form submitted by Defendants with the Motion to Dismiss contains a stamp showing it was received on February 7, 2007. (Stovall Decl. Ex. A.) The absence of any stamp on the 602 form submitted by Plaintiff in his Complaint is evidence that it was not submitted to the first level of formal review. <u>Cf.</u> Fed. R. Evid. 803(7). That and the attachments dated December 23, 2006, and January 17, 2007, compel the Court to find that February 7, 2007, was the date the appeal was received by the prison. Nevertheless, the first level appeal was not rejected as untimely. (Stovall Decl. Ex. C at 1.)

Plaintiff brought an action for purposes of § 1997e(a) when he tendered his Complaint to the district court clerk on January 29, 2007.  See Vaden, 449 F.3d at 1050.  Therefore, he did not "exhaust administrative remedies before submitting any papers to the federal courts."  Id. at 1048.  In fact, it appears Plaintiff brought the action in federal court prior to initiating any administrative remedies.

Easter has failed to rebut Defendants' evidence that he did not exhaust the formal review process prior to filing his Complaint.  Moreover, he concedes that he has not exhausted his available administrative remedies.  (Pl.'s Opp'n 4.)  For these reasons, Plaintiff's Complaint should be dismissed.

**B.    Dismissal With or Without Prejudice**

The Defendants request that the action be dismissed with prejudice because failure to file a second level appeal within fifteen days of the first level response means Easter is now unable to exhaust his administrative remedies.  (Defs.' Mem. of P. & A. 7.)  Easter alleges that he was unable to exhaust his administrative remedies due to the Defendants' "gamesmanship" with his original appeal.  (Pl.'s Opp'n 4.)  He also alleges that he did file his second level appeal within fifteen days of receiving his first level response.  (Id. at 3.)  Easter requests that the action be dismissed without prejudice so that he can properly exhaust the remainder of his administrative remedies.  (Id. at 4.)

Existing Ninth Circuit case law directs the district court to dismiss the Complaint without prejudice.  Vaden, 449 F.3d at 1051 (citing Wyatt, 315 F.3d at 1120).  But Vaden v. Summerhill, 449 F.3d 1047, and Wyatt v. Terhune, 315 F.3d 1108, were decided prior

to Woodford v. Ngo. Since the Supreme Court's decision in Woodford v. Ngo, 548 U.S. 81, it may no longer be appropriate to dismiss this Complaint with leave to amend if it is too late for Easter to properly exhaust administrative remedies. A prisoner would "have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction." Woodford v. Ngo, 548 U.S. at __, 127 S. Ct. at 2388. The Court will consider whether Easter is in that situation. The factual basis for Plaintiff's claim, and the steps he took to exhaust the claim are before the Court.

The appeals coordinator at Donovan alleges that Easter received the first level response on April 27, 2007. (Stovall Decl. ¶ 10.) Plaintiff had fifteen working days from that date to file a second level appeal. See Cal. Code Regs. tit. 15, § 3084.6(c). The 602 form submitted by the Defendants shows a stamp of April 27, 2007, as the date the appeal was "returned" to Plaintiff. (Stovall Decl. Ex. A.) Easter's 602 form also shows this stamp. (Pl.'s Opp'n Ex. F.) But Easter had been transferred to ISP nine days earlier, on April 18, 2007. (Pl.'s Opp'n 3.) Defendants do not dispute that Plaintiff was transferred to Ironwood on that date.

Easter represents that he did not receive his first level response from Donovan until May 22, 2007. (Id.) He then submitted a second level appeal to ISP on May 25, 2007. (Id. Ex. F.) If Plaintiff received the response on April 27, 2007, his appeal did not fall within the required fifteen working days, and he no longer has time to exhaust his administrative remedies. See Cal. Code Regs. tit. 15, § 3084.6(c). But if he received the response on May

22, 2007, Easter attempted to keep the administrative process alive when he submitted his second level appeal to ISP three days later. The evidence supports Plaintiff's contention that he did not receive the first level response until May 22, 2007.

The prison had twenty working days to respond to the second level appeal submitted by Easter. See Cal. Code Regs. tit. 15, § 3084.6(b)(3) (2006). He did not receive a response until August 9, 2007. (Pl.'s Opp'n Ex. F.) This was well beyond the required twenty-day response time. The appeal was rejected, not because it was late, but because Easter should have sent it directly to Donovan. (Id.) Easter alleges that he resubmitted the appeal to Donovan in accordance with the August 4, 2007, letter. (Pl.'s Opp'n 3.)

Although the Defendants filed their Reply to Plaintiff's Opposition on October 22, 2007, they have produced no evidence that Plaintiff's appeal was rejected as untimely, which would end his right to appeal further. Indeed, the declaration of A. Santiago, stating that Easter had not completed the second or third levels of review, was signed on June 7, 2007, almost two months before Easter's claimed August 2007 submission. The Defendants have failed to meet their burden of showing that Plaintiff can no longer properly exhaust his administrative remedies.

For these reasons, Plaintiff's Complaint should be **DISMISSED WITHOUT PREJUDICE**. Plaintiff must pursue any administrative remedies that may still be available to him prior to filing a suit, and he may file a new action in which he asserts claims that administrative remedies were properly exhausted.

**IV. ADDITIONAL GROUNDS FOR DISMISSAL RAISED BY DEFENDANT TILTON'S MOTION TO DISMISS**

The Court has concluded that Plaintiff failed to exhaust his administrative remedies prior to filing this action, and his Complaint should be dismissed.  This, by itself, would resolve this case.  Nevertheless, because Defendant Tilton also moves to dismiss on the grounds that he is immune from suit and that Plaintiff cannot maintain an action against him on a theory of respondeat superior, the Court will address these contentions.

**A.   Absolute Immunity**

The Eleventh Amendment grants the states immunity from private civil suits.  U.S. Const. amend. XI; Henry v. County of Shasta, 132 F.3d 512, 517 (9th Cir. 1997), as amended, 137 F.3d 1372 (9th Cir. 1998).  This immunity applies to civil rights claims brought under § 1983, so an inmate cannot recover damages from the state under § 1983 unless the state waives its immunity.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989).  A federal court only has jurisdiction over a suit against a state when the relief sought is "prospective injunctive relief in order to end a continuing violation of federal law."  Armstrong v. Wilson, 124 F.3d 1019, 1025 (9th Cir. 1997) (quoting Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 73 (1996)) (internal quotations omitted).

Eleventh Amendment immunity also extends to state officials sued in their official capacities.  "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will, 491 U.S. at 71 (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)).  "As such, it is no different from a suit against the

State itself." Id. (citing Kentucky v. Graham, 473 U.S. 159, 165-66 (1985); Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 690 n.55 (1978)).

The Eleventh Amendment does not bar suit against state officials sued in their individual capacity. Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("[T]o establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right."). But where a state official is sued in his individual capacity as a nominal defendant, Eleventh Amendment immunity applies. See Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997). "[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." Id. (quoting Ford Motor Co. v. Dep't of Treasury, 323 U.S. 459, 464 (1945)). The application of Eleventh Amendment immunity "is to be determined not by the mere names of the titular parties but by the essential nature and effect of the proceeding, as it appears from the entire record." Scheuer v. Rhodes, 416 U.S. 232, 237 (1974).

Easter sued J. Tilton, the Secretary of California Department of Corrections and Rehabilitation ("CDCR"), in his official capacity and in his individual capacity. (Compl. 2.) Plaintiff's claims against Tilton in his official capacity constitute claims against the State of California, which is absolutely immune from liability for damages. See Brandon, 469 U.S. at 471.

While Easter is also suing Defendant Tilton in his individual capacity, he makes no allegations that Defendant Tilton's

individual conduct resulted in constitutional violations. Easter alleges that the CDCR is "responsible for hiring correctional officers who put my life in danger. . . ." (Compl. 3.) A state official is stripped of his Eleventh Amendment immunity only as a "consequence of his individual conduct." Scheuer, 416 U.S. at 237. Plaintiff makes no allegations that Defendant Tilton had any personal knowledge of Easter's situation or that any of Tilton's personal actions violated Plaintiff's constitutional rights. Defendant Tilton cannot be stripped of his Eleventh Amendment immunity when it appears he is being sued simply because he is the Secretary of the CDCR. (See Compl. 2.) Plaintiff concedes that the action against Defendant Tilton should be dismissed. (Pl.'s Opp'n 4.) For these reasons, Plaintiff is barred from seeking damages from Tilton in his official or individual capacity.

**B.  Respondeat Superior**

Section 1983 of the Civil Rights Act does not allow a cause of action based on respondeat superior liability. See Monell, 436 U.S. at 692 ("[T]he fact that Congress did specifically provide that A's tort became B's liability if B 'caused' A to subject another to a tort suggests that Congress did not intend § 1983 liability to attach where such causation was absent."). State officials are subject to suit in a personal capacity only if "they play an affirmative part in the alleged deprivation of constitutional rights." King v. Atiyeh, 814 F.2d 565, 568 (9th Cir. 1987).

Plaintiff alleges that "CDC officials or [sic] responsible for putting me back in the same yard witch [sic] put my life in danger agian [sic]. . . ." (Compl. 2.) But he does not allege that Tilton

had any personal knowledge of, or involvement in, the acts that led to Plaintiff's stabbing. Easter cannot maintain this action based on Tilton's supervisory capacity.

For all of these reasons, Plaintiff's Complaint against Defendant Tilton should be **DISMISSED WITH PREJUDICE**.

## V. CONCLUSION

Because Plaintiff failed to exhaust administrative remedies prior to filing this action, Defendants' Motions to Dismiss should be **GRANTED**, and Plaintiff's Motion to Proceed should be **DENIED**. The action against Defendants Perez, Panichello and Morris should be **DISMISSED WITHOUT PREJUDICE** in its entirety. The action against Defendant Tilton should be **DISMISSED WITH PREJUDICE** in its entirety.

This Report and Recommendation will be submitted to the United States District Court judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or before **March 17, 2008**. The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be served and filed on or before **March 24, 2008**. The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 29, 2008

_____
Ruben B. Brooks
United States Magistrate Judge

cc: Judge Lorenz
   All Parties of Record